*379
 
 Opinion
 

 ASHBY, J.
 

 Appellant Elizabeth Getz appeals from a judgment denying her petition for a writ of mandate (Code Civ. Proc., § 1094.5) reviewing an administrative rent control decision of respondent rent stabilization department of respondent City of West Hollywood.
 

 Under “vacancy decontrol” provisions of respondents’ rent control ordinance and regulations, appellant, a landlord, previously received approval to increase the rent on the basis that the residential unit had been voluntarily vacated. Subsequently an administrative hearing officer set aside the vacancy increase on the basis that appellant had misrepresented the facts surrounding the vacancy. The hearing officer concluded there had not been a vacancy, because real party in interest Thierry Makram had moved in with the previous tenant, paid rent directly to appellant and been accepted by appellant as a new tenant before the previous tenant vacated.
 

 By denying appellant’s petition for writ of administrative mandate, the trial court upheld the administrative decision. The standard of review for both the trial court and this court is whether substantial evidence in light of the whole record supports the hearing officer’s decision. (Code Civ. Proc., § 1094.5, subd. (c);
 
 San Marcos Mobilehome Park Owners’ Assn.
 
 v.
 
 City of San Marcos
 
 (1987) 192 Cal.App.3d 1492, 1499-1500 [238 Cal.Rptr. 290].) We affirm the judgment because substantial evidence supports the hearing officer’s decision.
 

 Facts
 

 We state the evidence in the light most favorable to the judgment.
 
 (Foreman & Clark Corp.
 
 v.
 
 Fallon
 
 (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362].)
 

 The residential property involved is a two-bedroom house owned by appellant. Appellant saw the premises daily because appellant lived over a garage in the back of the house. In 1983 appellant rented the house to Michel Duvernay and Mark Turner, pursuant to a written rental agreement providing a month-to-month tenancy. The rental agreement provided that “the premises are rented for use as a residence only for not more than two persons, namely, Michel Duvernay and Mark Turner” and that “tenants shall not let or sublet all or any part of the premises to any other person without first obtaining the written consent of the landlord.” In 1984, Michel Duvernay died.
 

 In May 1987 Thierry Makram moved into the house as a roommate of Mark Turner. As soon as he moved in, Makram “assume[d] the responsibil
 
 *380
 
 ity” of paying the rent. Makram had no formal arrangement with Turner or with appellant, but he assumed this responsibility because TXirner was frequently out of town. Makram paid the entire rent ($580) directly to appellant in May, June, July, August, September and October 1987. Some of Makram’s rent payments were slipped into appellant’s mailbox, but others he delivered to her personally. Appellant was aware of Makram’s presence from the time he moved in; appellant saw him there nearly every day.
 
 [1]
 
 Appellant accepted Makram’s checks. She never complained about his being there or asked him to leave.
 
 [2]
 

 In November 1987 Mark Turner contacted appellant’s lawyer and stated he wished to terminate his tenancy. Appellant and Makram were surprised by this news; they both expected Turner would come back from his travels. Turner confirmed in writing from Seattle, Washington that he was voluntarily terminating his tenancy effective November 14, 1987.
 

 On November 20, 1987, Makram and appellant, through appellant’s lawyer, executed a written one-year lease at a monthly rent of $1,200. Makram knew nothing about the City of West Hollywood rent control ordinance when he executed this lease.
 

 Respondents issued appellant a vacancy increase certificate authorizing a rent increase to $1,200 a month, based upon appellant’s representation that the property was vacated voluntarily on November 14, 1987, and re-rented on November 20, 1987.
 

 Makram received no notices sent from the rent stabilization department and did not learn until November 1988 that the property was subject to rent control. He thereafter promptly filed an administrative appeal to challenge the maximum allowable rent (by then $1,239 a month) on the ground the vacancy increase was obtained by misrepresentation or fraud, because he had been a tenant since May 1987 and the house was never vacant.
 

 The hearing officer set aside the vacancy increase on the ground of misrepresentation and set the maximum allowable rent at $603.
 

 Substantial Evidence
 

 Appellant contends that only Mark Turner was a tenant and that Thierry Makram did not become a tenant until Makram executed a lease
 
 *381
 
 November 20, 1987. Appellant concludes that since Mark Turner voluntarily terminated his tenancy on November 14, 1987, appellant did not misrepresent the facts in her application for a vacancy increase.
 

 Substantial evidence supports the hearing officer’s contrary conclusion that Makram had been accepted by appellant as a tenant for six months, therefore there was no vacancy within the meaning of the rent control ordinance and regulations.
 

 The ordinance (City of West Hollywood Mun. Code, § 6410 B) provides, “When a tenancy in a detached single family residence is voluntarily terminated by a tenant... the landlord may increase the Maximum Allowable Rent for that unit.” The regulations (§ 41000(A)) provide, “A landlord may increase the Maximum Allowable Rent (MAR) of a residential rental unit the first time it is rented after it becomes vacant .... (2) The MAR of a single family residence may be increased by any amount. (3) Rental units which qualify for a vacancy increase are units which have been voluntarily vacated by a tenant . . . .”
 

 Appellant points out that the ordinance and paragraph (3) of the regulation focus upon the voluntary termination by the prior tenant rather than the condition of the unit as “vacant” in the dictionary sense. Appellant contends she made no misrepresentation in stating on her application that the unit was voluntarily vacated on November 14, 1987. This part of appellant’s argument, however, fails to address Makram’s status as a tenant. If Makram was already a tenant, he did not voluntarily vacate his tenancy. As the hearing officer pointed out, the ordinance contains a broad definition of tenant which can reasonably apply to Makram’s status from May to October 1987. Section 6402 S defines
 
 “Tenant”
 
 to mean “a person, including a subtenant, lessor or sublessor, who has a tenancy.” Section 6402 R defines “Tenancy” to mean ‘the right or entitlement of a tenant to use or occupy a rental unit.” The hearing officer could conclude that under all the circumstances Makram had established a tenancy at the $580 rent which remained subject to rent control.
 

 A tenancy may be created without a formal agreement, by consent and acceptance of rent.
 
 (Parkmerced Co.
 
 v.
 
 San Francisco Rent Stabilization & Arbitration Bd.
 
 (1989) 215 Cal.App.3d 490, 494 [263 Cal.Rptr. 617];
 
 Miller
 
 v.
 
 Elite Ins. Co.
 
 (1980) 100 Cal.App.3d 739, 750 [161 Cal.Rptr. 322].) Such conduct can create a landlord-tenant relationship despite the absence of a lease.
 
 (Parkmerced Co.
 
 v.
 
 San Francisco Rent Stabilization & Arbitration Bd., supra,
 
 at pp. 494-495, fn. 5; Cal. Residential Landlord Tenant Practice
 
 *382
 
 (Cont.Ed.Bar 1986) § 1.6, pp. 12-13; Civ. Code, § 1940, subd. (a).)
 
 [3]
 
 Such a “tenant” may be entitled to invoke the protection of rent control laws.
 
 (Parkmerced Co.
 
 v.
 
 San Francisco Rent Stabilization & Arbitration Bd.,
 
 supra;
 
 M & L Jacobs, Inc.
 
 v.
 
 Delgrosso
 
 (1985) 128 Misc.2d 725 [490 N.Y.S.2d 963, 968], affd. on other grounds (1986) 133 Misc.2d 542 [509 N.Y.S.2d 237].) Whether consent and acceptance of rent created a landlord-tenant relationship depends of course on the particular circumstances of each case.
 

 Based on the evidence produced at the administrative hearing, the hearing officer could reasonably conclude that Makram had established a tenancy. We must affirm a judgment based on findings supported by substantial evidence even if the evidence would also support contrary findings. A different trier of fact could reasonably conclude that Makram’s payments were merely on Turner’s behalf and that by accepting them appellant had no intent to create a landlord-tenant relationship with Makram. A different trier of fact could reasonably conclude that when Turner terminated his tenancy in November 1987, appellant had the right to evict Makram and the concomitant right to demand a new lease with increased rent.
 
 [4]
 
 The hearing officer’s findings, however, are also reasonable on the particular facts of this case. Damaging concessions in appellant’s testimony support the conclusion that appellant accepted Makram as a tenant for six months before formalizing the arrangement with a new written lease. (Fns. 1, 2,
 
 ante.)
 
 Makram testified that he knew nothing about the rent control ordinance when he signed the lease. No suggestion was raised that Turner and Makram schemed together to mislead appellant in order to “pass on” to Makram a rent controlled tenancy. (Cf.
 
 Miller & Desatnik Management Co.
 
 v.
 
 Bullock
 
 (1990) 221 Cal.App.3d Supp. 13, 20 [270 Cal.Rptr. 600].)
 

 Findings
 

 Appellant appears to contend that the findings made by the hearing officer were insufficient or unclear. To the extent this argument rehashes whether Makram had the status of tenant, it is without merit. Furthermore, contrary to appellant’s suggestion of ambiguity, the hearing officer’s decision was thorough and complete. It included a four-page summary of the evidence, a three-page analysis of the evidence explaining the reasoning of the decision, nine findings of fact and six conclusions of law. The decision provided ample basis to permit the court on judicial review to determine the reasoning of the administrative agency. (See
 
 Topanga Assn. for a Scenic
 
 
 *383
 

 Community
 
 v.
 
 County of Los Angeles
 
 (1974) 11 Cal.3d 506, 514-515 [113 Cal.Rptr. 836, 522 P.2d 12].)
 

 Timeliness of Administrative Appeal
 

 Appellant contends the hearing officer was without jurisdiction to hear Makram’s appeal because Makram did not file a timely appeal from a prior rent stabilization department notice of current maximum allowable rent dated February 1,1988. This contention fails in light of Makram’s testimony, apparently accepted by the hearing officer, that Makram did not receive that notice or any notice from the department before November 1988.
 

 Under regulation section 60067, fraud or misrepresentation are permissible grounds for objection to a certificate of maximum allowable rent. Since the tenant claimed lack of notice, respondents had discretion to consider the appeal notwithstanding the ordinary time limits in respondents’ regulations.
 
 [5]
 
 As explained by the trial court in its memorandum of decision, this conclusion is consistent with state law which provides that the permissible rent levels reflected in the certificate shall “in the absence of intentional misrepresentation or fraud” be binding and conclusive upon the local agency. (Civ. Code, § 1947.8, subd. (c).) By hearing the tenant’s appeal, respondents did not act in excess of jurisdiction or against the law. (Code Civ. Proc., § 1094.5, subd. (b).)
 

 The judgment is affirmed.
 

 Turner, R J., and Grignon, J., concurred.
 

 Appellant’s petition for review by the Supreme Court was denied November 14, 1991.
 

 [1]
 

 Appellant’s awareness and acceptance was confirmed by her own testimony that “. . . sometimes I go walk in the yard and he sees me and he would say how beautiful the houses are. And he loves it here. It’s quiet and he’s very happy. In fact, he asked me—promising I should sell him the house when the time comes.”
 

 [2]
 

 Appellant testified, “. . . I just let things go-—I thought everything is perfect.”
 

 [3]
 

 Civil Code section 1940, subdivision (a) defines “persons who hire dwelling units” to include “tenants, lessees, boarders, lodgers, and others, however denominated.”
 

 [4]
 

 Section 6413 B 8 of the ordinance permits eviction if “the person in possession of the rental unit is a subtenant not approved by the landlord . . . .”
 

 [5]
 

 Regulation sections 60067 and 60068 provide that an objection must be filed within 15 days of the date the certificate was issued, and if a complete objection is not timely filed the rent set forth in the certificate shall become final and cannot be changed.