[No. B070030. Second Dist., Div. One. May 4, 1994.]

SUNBURST BANK, Plaintiff and Appellant, v.
EXECUTIVE LIFE INSURANCE COMPANY et al., Defendants and
Respondents.

[No. B070031. Second Dist., Div. One. May 4, 1994.]

NATIONSBANK OF TEXAS, N.A., Plaintiff and Appellant, v.
EXECUTIVE LIFE INSURANCE COMPANY et al., Defendants and
Respondents.

[Nos. B071799, B072863, B079406. Second Dist., Div. One. May 4, 1994.]

In re EXECUTIVE LIFE INSURANCE COMPANY in Conservation of
Assets.
JOHN GARAMENDI, As Insurance Commissioner, etc., Plaintiff and
Respondent, v.
EXECUTIVE LIFE INSURANCE COMPANY, Defendant;
SUNBURST BANK et al., Claimants and Appellants.

---

## COUNSEL

Daniel & Lezar, Robert D. Daniel, Peveril O. Settle III, Crosby, Heafey, Roach & May, Peter W. Davis, Paul D. Fogel, Marc R. Benson, Phelps Dunbar, Michael D. Hunt and Allen D. Darden for Plaintiffs and Appellants and for Claimants and Appellants.

Cook, Yancey, King & Galloway, Herschel E. Richard, Jr., Glenn L. Langley, William C. Kalmbach III, Murphy, Weir & Butler, Penn Ayers Butler, Tobias S. Keller, Pachulski, Stang, Ziehl & Young, Thomas E. Musselman, Ian A. W. Nasatir, Larry W. Gabriel, Brobeck, Phleger & Harrison, G. Larry Engel, Kent M. Roger, Esther H. Pang and David M. Higgins for Defendants and Respondents.

Daniel E. Lungren, Attorney General, Edmond B. Mamer, Deputy Attorney General, Rubinstein & Perry, Karl L. Rubinstein, Dana Carli Brooks, Melissa S. Kooistra and Robert H. Nunnally, Jr., for Plaintiff and Respondent and for Defendants and Respondents.

## OPINION

**VOGEL (Miriam A.), J.**—Executive Life Insurance Company (ELIC) sold Municipal Bond Guaranteed Investment Contracts (Muni-GICs) to two banks. When the banks failed, the Federal Deposit Insurance Corporation (FDIC) placed them in receiverships and transferred their assets (including the ELIC Muni-GICs) to successor banks which, in turn, became creditors in ELIC's subsequent conservatorship proceedings. To obtain priority over other claimants, the banks contend their ephemeral involvement with the FDIC clothed them with the aura of a governmental entity. The trial court disagreed and so do we.

### FACTS

In 1986, InterFirst Bank Houston, N.A. (a Texas bank) and Capital Bank & Trust Co. (a Louisiana bank), as trustees acting for the benefit of municipal bondholders, invested funds in ELIC's Muni-GICs. InterFirst invested about $295 million and Capital invested about $150 million.[1]

On October 30, 1987, by court order, Capital was declared insolvent and placed in receivership by the FDIC. That same day, the FDIC organized a

---

[1] Under separate trust indenture agreements, InterFirst and Capital were the trustees for funds obtained from the sale of municipal bonds, the proceeds of which were to be used to finance low-income housing (for InterFirst's beneficiary, The Southeast Texas Housing Finance Corporation, SETHFCO) and agricultural loans (for Capital's beneficiary, the Louisiana Agricultural Finance Authority, LAFA). Under the indenture agreements (which are contracts between the municipal bond issuers and their indenture trustee-banks), the

"bridge bank," Capital Bank & Trust Co., N.A. (CBTNA).[2] CBTNA, in turn, entered into a purchase and assumption agreement, pursuant to which Capital's trust business was transferred to CBTNA by the receiver (the FDIC), which made CBTNA the successor trustee under the LAFA trust indenture and the holder of the ELIC Muni-GICs. On May 23, 1988, Grenada Sunburst System Corporation acquired CBTNA pursuant to an agreement which resulted in the merger of CBTNA and Sunburst Bank, a wholly owned subsidiary of Grenada. To induce the merger and the transfer of CBTNA's trust assets (including the ELIC Muni-GICs) to Sunburst, the FDIC indemnified Sunburst for all losses arising from the acquisition agreement, including any claims by Capital's creditors. Since that time, Sunburst has served as the successor trustee of LAFA's ELIC Muni-GICs.

Meanwhile, during June 1987, InterFirst merged with First RepublicBank of Houston, N.A. On July 29, 1988, by court order, RepublicBank was placed in FDIC receivership. The same day, pursuant to a purchase and assumption agreement, the FDIC (as receiver) transferred some of RepublicBank's assets and trust business (including the ELIC Muni-GICs) to JRB Bank, N.A., a bridge bank created by the FDIC for that purpose. The bridge bank became the successor trustee under the SETHFCO trust indenture and the holder of the ELIC Muni-GICs. Later the same day, the FDIC accepted the bid of NCNB Corporation to purchase the bridge bank's stock. To induce NCNB to make the purchase, the FDIC promised financial assistance to NCNB and its affiliates and, as part of that assistance, agreed to indemnify NCNB Texas National Bank—the renamed bridge bank—against any losses, liabilities or expenses it might later incur in any proceeding as a result of the assumption. Since that time, NCNB Texas (later renamed NationsBank of Texas, N.A.) has served as the successor trustee of SETHFCO's ELIC Muni-GICs.

---

trustees were expressly obligated to purchase one or more ELIC Muni-GICs. In 1986, ELIC issued eight Muni-GICs (only three are involved in this case), for a total consideration of about $1.8 billion. The Muni-GICs required ELIC to make specified interest payments and permitted the trustees to withdraw accumulated interest (which could then be used to service the debt on the bonds and to finance the low-income housing and agricultural loans). At maturity, ELIC was to return to the trustees their initial investments and any unpaid interest. SETHFCO and LAFA were third party beneficiaries of the Muni-GICs which are the subject of these proceedings.

[2]The FDIC is authorized by statute to establish a "bridge bank" to take over the assets and liabilities of a failed bank and to carry on its business for a limited period while an agreement is worked out with a purchasing bank. (12 U.S.C. § 1821(n).)

On April 11, 1991, the California Insurance Commissioner, acting under the authority of section 1011 of the Insurance Code,[3] asked the Los Angeles Superior Court to place ELIC into conservatorship. The unopposed request was granted, the Commissioner was named as the conservator and, among other things, a moratorium was imposed on payments to the Muni-GIC trustees. In August, the Commissioner submitted a proposed rehabilitation plan which established priorities among claimants according to a schedule which placed Muni-GICs at the bottom of the ladder (Class 6), below ELIC's non-Muni-GIC policyholders (who were placed in Class 5). (§ 1033, subd. (a).)[4] Under this proposed plan, the ELIC policies with Class 5 priority were to be transferred to the newly created Aurora National Life Insurance Company, which would issue new policies equal to about 80 percent of the value of the original policies. ELIC annuity contracts and "Pension-GICs" (GICs issued by ELIC to employee pension funds) were given Class 5 priority.

In the fall of 1991 (while the rehabilitation plan was pending before the trial court), Sunburst and NationsBank sued ELIC and the Commissioner, seeking a declaration that their Muni-GICs were entitled to "at least" the Class 5 priority given to other annuities and Pension-GICs under the proposed rehabilitation plan. In an amended complaint, Sunburst alleged its claim was entitled to Class 4 priority—on the theory that the FDIC, as a government entity, was entitled to Class 4 priority and that, therefore, so was Sunburst—because the FDIC's momentary possession of Sunburst's Muni-GICs had, by an actual or implied assignment or other alchemy, bestowed upon Sunburst the right to walk in the FDIC's shoes. Following a mid-November trial on the proposed rehabilitation plan, the trial court ruled that the Muni-GICs were entitled to Class 5 priority but postponed a ruling on Sunburst's request for Class 4 priority.

In January 1992, the Commissioner submitted a revised rehabilitation plan which, in conformance with the trial court's ruling, included the Muni-GICs

---

[3] Unless otherwise stated, all section references are to the Insurance Code.

[4] Subdivision (a) of section 1033 lists the order of "[p]riorities in allowance of claims" against an insolvent insurer:

"(a) Claims allowed in [an insolvency] proceeding shall be given preference in the following order:

"(1) Expense of administration.

"(2) Unpaid charges due under provisions of Section 736 [expenses incurred by the Commissioner in examining the insurer's business and affairs].

"(3) Taxes due to the State of California.

"(4) Claims having preference by the laws of the United States and by laws of this state.

"(5) All claims of the California Insurance Guarantee Association, the California Life and Health Insurance Guarantee Association, and associations or entities performing a similar function in other states, together with claims for refund of unearned premiums and all claims of policyholders of an insolvent insurer that are not covered claims. . . .

"(6) All other claims."

in Class 5. Under this plan, all Class 5 claimants would receive about 70 percent of the value of their claims (as opposed to the 80 percent contemplated under the original plan). (See *Texas Commerce Bank* v. *Garamendi* (1992) 11 Cal.App.4th 460 [14 Cal.Rptr.2d 854].)

On January 10, NationsBank amended its declaratory relief complaint to assert a right to Class 4 priority for its Muni-GIC on the same theory as Sunburst and, in February, Sunburst and NationsBank moved for summary judgment. The Commissioner, several other Class 5 claimants, and the other Muni-GIC holders who had not acquired their Muni-GICs from or through the FDIC, all opposed the motion, and the Commissioner also filed a cross-motion for summary judgment. The trial court denied the Banks' motions, granted the Commissioner's motion, and entered judgment against NationsBank and Sunburst in their declaratory relief actions, finding their Muni-GICs were not entitled to Class 4 priority. NationsBank and Sunburst appeal.[5]

## DISCUSSION

NationsBank and Sunburst contend their claims are entitled to Class 4 priority because they have a preference under federal law. Although we are inclined to disagree, the point is immaterial—because even assuming the FDIC would have had a right to priority if it was a party litigant, no such right was assigned or otherwise transferred to the Banks.

### Introduction

Class 4 priority is available only for those claims "having preference by the laws of the United States and by laws of this state." (§ 1033, subd. (a)(4).) To bring themselves within this category, the Banks claim a preference under title 31 United States Code section 3713(a)(1), which provides

---

[5]On July 31, the trial court approved the revised reorganization plan and authorized the immediate transfer of assets from ELIC to Aurora. NationsBank and Sunburst also appealed from that order (No. B071799), and from a November 25 order which stands or falls with the July 31 order (No. B072863). The parties agree (and so do we) that Division Four's decision in *Commercial Nat. Bank* v. *Superior Court* (1993) 14 Cal.App.4th 393 [17 Cal.Rptr.2d 884], which vacates the July 31 order, makes these other appeals moot and we therefore dismiss them on that ground, limiting our discussion on this appeal to the priority issue raised on the cross-motions for summary judgment.

Following the decision in *Commercial Nat. Bank* v. *Superior Court, supra,* 14 Cal.App.4th 393, the Commissioner proposed a new plan, which the trial court approved. The new plan was the same as the earlier plan insofar as this case is concerned (it reiterated the judgments denying Class 4 status to NationsBank and Sunburst) and, to play it safe, the Banks filed a new notice of appeal (No. B079406). The issues are the same and that appeal has therefore been consolidated with the appeals from the summary judgments.

(as relevant) that a "claim of the United States Government shall be paid first when . . . a person indebted to the Government is insolvent and . . . an act of bankruptcy is committed . . . ."

The Banks' syllogism is this: Federal policy promotes "a healthy and solvent national banking system," including efforts by the FDIC to protect the assets of insolvent financial institutions by encouraging asset assignments to new banks which, in turn, provide uninterrupted service to the public. Federal law (including 31 U.S.C. § 3713(a)(1)) gives the FDIC the tools to implement such transfers, by bestowing upon the FDIC "the right to assert a federal law priority in an insolvency proceeding" such as ELIC's conservatorship. California law (§ 1033, subd. (a)(4)) recognizes this right by permitting claims made under "the laws of the United States" to be paid ahead of most other claims "because claims that may affect the public fisc are entitled to satisfaction before private parties may be reimbursed." The FDIC's functions are "fundamentally governmental" and, under "settled assignment principles, NationsBank and Sunburst, the FDIC's assignees, are entitled to assert a [C]lass 4 priority as well." According to NationsBank and Sunburst, the fact that ELIC's indebtedness and "act of bankruptcy" (the conservatorship) are admitted means there are only two questions to be decided in this case—whether the FDIC is entitled to assert a federal priority and, if so, whether the Banks can do so as their assignees.

### Priority

According to the Banks, the FDIC is entitled to priority because it is both (1) an "integral part of the governmental mechanism" created to accomplish something Congress deemed to be of national importance (*Small Business Adm'n v. McClellan* (1960) 364 U.S. 446, 450 [5 L.Ed.2d 200, 203, 81 S.Ct. 191]) and (2) its activities affect the federal treasury (cf. *Federal Home Loan Mortgage Corp. v. Superior Court* (1990) 224 Cal.App.3d 218, 222-223 [273 Cal.Rptr. 531]). Since other "federally chartered corporations" which meet these criteria have been held to be federal agencies or instrumentalities (*Rust v. Johnson* (9th Cir. 1979) 597 F.2d 174, 177-178 [Federal National Mortgage Association]; *U.S. v. Rivieccio* (E.D.N.Y. 1987) 661 F.Supp. 281, 287-288 [National Credit Union Administration]; *Fed. Land Bank of Wichita v. Bd. of County Com'rs* (D.Colo. 1984) 582 F.Supp. 1507, 1511 [Federal Land Bank]), the same result should follow as to the FDIC—because the FDIC performs important governmental functions by regulating banks, insuring deposits, and minimizing the effect of bank failures on the national banking system. For these and related reasons, the Banks conclude, the FDIC is entitled to Class 4 priority.

According to the Commissioner and the other Muni-GIC owners, the Banks' argument ignores the fact that the FDIC has three distinct roles—one

as regulator (12 U.S.C. § 1820(g)), one as corporate insurer of deposits (12 U.S.C. § 1811 et seq.), and one as receiver of failed banking institutions (12 U.S.C. § 1821(c).)[6] In the latter context (as in this case), the FDIC stands in the shoes of the insolvent bank (*Federal Deposit Insurance Corporation* v. *Glickman* (9th Cir. 1971) 450 F.2d 416, 418) and acquires the rights and duties of that institution (*F.D.I.C.* v. *Wheat* (5th Cir. 1992) 970 F.2d 124, 130), no more and no less. For this reason, the FDIC (wearing its receiver hat) is not a federal instrumentality for purposes of the Tax Injunction Act (28 U.S.C. § 1341, which precludes a federal court from interfering with the collection of state taxes) or the Eleventh Amendment of the United States Constitution. (*Federal Deposit Ins. Corp.* v. *State of N.Y.* (2d Cir. 1991) 928 F.2d 56; *PIMA Financial Serv.* v. *Intermountain Home Systems* (D.Colo. 1992) 786 F.Supp. 1551, 1560-1561.) A fortiori (according to the Commissioner and the other Muni-GIC owners), the FDIC does not have a right to priority over ELIC's other policyholders—because the FDIC can have no greater rights than its assignors, Capital and Republic Bank.[7]

Having stated the issue, we move on without deciding it, leaving it to another court at another time to resolve an apparent conflict in the cases. As we will explain, the FDIC's failure to assign to the Banks any right of its own (as opposed to the rights and assets of the failed banks) defeats the contention that, assuming the FDIC would itself have had a right to priority in this case, any such right was transferred to NationsBank or Sunburst.

---

[6]"The FDIC's roles as receiver and as corporate insurer are distinct. In its capacity as receiver, the FDIC is obligated to marshal the assets of the failed bank for the benefit of the bank's creditors and shareholders. In its corporate capacity, the FDIC is obligated to insure the failed bank's deposits." (*Federal Deposit Ins. Corp.* v. *Hatmaker* (6th Cir. 1985) 756 F.2d 34, 36, fn. 2.)

[7]For an interesting mix of cases, see *Lapadula & Villani, Inc.* v. *United States* (S.D.N.Y. 1983) 563 F.Supp. 782, 784 (the public treasury is unaffected by the FDIC's success or failure in recovering debts owed to it as successor to the claims of a failed bank, which means the FDIC is not an integral part of the governmental mechanism but rather a separate legal entity serving essentially a proprietary rather than a sovereign function, which means it is not entitled to priority); *PIMA Financial Serv.* v. *Intermountain Home Systems, supra,* 786 F.Supp. 1551, 1560-1561; and compare *Federal Home Loan Mortgage Corp.* v. *Superior Court, supra,* 224 Cal.App.3d at page 224, footnote 2 (without distinguishing the FDIC's separate corporate and receiver functions, Division Seven of our court suggested, in dicta, that the FDIC's actions always affect the public fisc); *Engleman* v. *Commodity Credit Corp.* (S.D.Cal. 1952) 107 F.Supp. 930, 932-936 (interpreting an earlier version of the priority statute to require the simultaneous occurrence of the elements of 31 U.S.C. § 3713, an (1) insolvent person who (2) is indebted to the government (3) commits an act of bankruptcy); *In re Big 'D'iscount Stores, Ltd.* (Bankr. D.S.C. 1976) 2 B.R. 1073 (the FDIC, while serving as receiver, was nevertheless acting in its "separate corporate capacity" when it purchased (for itself, not through a bridge bank) an asset of a failed bank); see also 12 United States Code section 1821(n)(6)(A) (a bridge bank is not an agency, establishment or instrumentality of the United States).

*Assignment*

Assuming for discussion that the FDIC could, in this litigation, assert a claim to federal priority on its own behalf, no such right was assigned or otherwise transferred to the Banks.[8]

As to both NationsBank and Sunburst, the purchase and assumption agreements provided, in identical language, that: "The Assuming Bank hereby accepts from the Receiver an assignment of, and the Receiver hereby sells, assigns, transfers, conveys and delivers to the Assuming Bank, all right, title and interest of the Receiver *in and to all of the following assets of the [Failed] Bank. . . .*" (Italics added.) The listed assets included the failed banks' "trust business" and the trust business, in turn, included the ELIC Muni-GICs. More specifically, each agreement provided, "with Respect to Trust Business," that the "Assuming Bank shall . . . succeed to the rights, obligations, properties, assets, investments, deposits, agreements and trusts of the [Failed] Bank . . . , *all to the same extent as though the Assuming Bank had originally assumed the same . . . .*" (Italics added.) In neither agreement is there an assignment of *anything* belonging to the FDIC.

These agreements did not confer on NationsBank or Sunburst any claim of priority the FDIC might have had. While no particular form of assignment is required, it is essential to the assignment of a right that the assignor manifest an intention to transfer the right. (Rest.2d Contracts, § 324; *Cockerell* v. *Title Ins. & Trust Co.* (1954) 42 Cal.2d 284, 291 [267 P.2d 16].) Nothing in the

---

[8]Implicit in the Banks' assignment argument is their assumption that a governmental entity's priority rights are assignable. Our rejection of the Banks' ultimate conclusion (by our holding that there was no assignment) does not include our acceptance of this underlying hypotheses. All we have done is cut to the chase. (See *I.C. Herman & Co., Inc.* v. *Taub, Hummel & Schnall, Inc.* (2d Cir. 1974) 497 F.2d 1301, 1302 [in bankruptcy proceedings, a customs broker who advances customs duties for an importer is not entitled to succeed to the rights of the United States against the bankrupt importer, and the broker thus cannot assert the government's right to have its claim accorded priority status in the distribution of the bankrupt's estate]; *White* v. *Moriarty* (1993) 15 Cal.App.4th 1290, 1298 [19 Cal.Rptr.2d 200] [an assignee of the FDIC is entitled to the benefit of the federal statute of limitations when it enforces a failed bank's note].) While the customs case is factually distinguishable because it does not involve an assignment, the limitations case is equally distinguishable (or more so). The availability of a longer period of limitations in an action between an assignee of an insolvent bank and a debtor of the same bank does no more than extend the period during which those parties can litigate their rights vis-à-vis each other. There are miles to go before reaching the Banks' conclusion, which would permit the assignee of a failed bank to claim priority in an action involving parties who had no relationship at all with the failed bank and who, by pure chance, are attempting to collect from the same third party debtor as the Banks. (See also *S.E.C.* v. *Albert & Maguire Sec. Co., Inc.* (3d Cir. 1977) 560 F.2d 569, 573 [bank receiving assignment of customer's priority claim in Securities Investor Protection Act liquidation could not assume preferred status because it would result in an "inequitable distribution" of the estate].)

purchase and assumption agreements establishes or even suggests an intent by the FDIC to assign to the Banks a right belonging to the FDIC qua FDIC. Quite the opposite intent is manifested by the provision that the assignment of the failed bank's trust assets was made "to the same extent as though" NationsBank and Sunburst "had originally assumed" those assets from the failed banks, without any involvement by the FDIC. (Rest.2d Contracts, § 203, subd. (c) ["specific terms and exact terms are given greater weight than general language]; *Furtado* v. *Metropolitan Life Ins. Co.* (1976) 60 Cal.App.3d 17, 25 [131 Cal.Rptr. 250].)

The Banks' reliance on *D'Oench, Duhme & Co.* v. *F.D.I.C.* (1942) 315 U.S. 447 [86 L.Ed. 956, 62 S.Ct. 676], is misplaced. In *D'Oench, Duhme*, the Supreme Court created a rule of estoppel to prevent a failed bank's borrowers from asserting against the FDIC and its assignees a defense based upon a secret or unrecorded agreement, on the theory that the FDIC must be able to value a failed bank by reference to its books and records, free from concerns about undisclosed side deals. (See *Bell & Murphy & Assoc.* v. *InterFirst Bank Gateway* (5th Cir. 1990) 894 F.2d 750, 754.) The *D'Oench, Duhme* doctrine (now codified in 12 U.S.C. § 1823(e)) may bar many claims and defenses which would defeat or diminish the FDIC's rights in and to an acquired asset, and it may sometimes be extended to benefit the FDIC's assignees (*Cadle Co. II, Inc.* v. *Lewis* (1993) 254 Kan. 158 [864 P.2d 718, 720-721]). But the doctrine has never been applied in the manner suggested by NationsBank and Sunburst, which would create an implied assignment bestowing upon an assignee of the FDIC a governmental priority over other claimants. (Compare *White* v. *Moriarty, supra*, 15 Cal.App.4th at pp. 1297-1298 [following the federal cases which have implied an assignment of the FDIC's right to a six-year period of limitations without discussion of the terms of the parties' purchase and assignment agreement].) Since the parties have demonstrated their ability to draft an assignment with specificity, and since the equities of this case do not favor a finding of implied assignment, we decline the Banks' invitation to extend the *D'Oench, Duhme* doctrine.

In short, the fleeting presence of the FDIC in the chain of possession of the Muni-GICs now owned by NationsBank and Sunburst did not transmogrify the Banks' claims into claims of the United States government.[9]

---

[9]The fact that the FDIC indemnified NationsBank and Sunburst against the claims of their predecessors' creditors adds nothing. An agreement to indemnify is not an assignment of a right. For this reason, we deny the Banks' request that we judicially notice documents from other lawsuits in which the FDIC apparently has agreed to contribute to obligations otherwise payable (if at all) by NationsBank and Sunburst. Aside from the fact that these documents were not before the trial court and thus ought not to be considered by us (*Carleton* v. *Tortosa* (1993) 14 Cal.App.4th 745, 753-754, fn. 1 [17 Cal.Rptr.2d 734]), they are irrelevant.

## DISPOSITION

The appeals from the July 31, 1992, and November 25, 1992, orders (Nos. B071799 and B072863) are dismissed. The judgments denying Class 4 priority to the claims made by NationsBank and Sunburst (Nos. B070030 and B070031) and the subsequent order incorporating those judgments (No. B079406) are affirmed.

Spencer, P. J., and Masterson, J., concurred.

A petition for a rehearing was denied May 27, 1994, and appellant's petition for review by the Supreme Court was denied August 18, 1994.