[No. A095196. First Dist., Div. Five. Apr. 10, 2002.]

JONATHAN COBB, Plaintiff and Appellant, v.
SAN FRANCISCO RESIDENTIAL RENT STABILIZATION AND
ARBITRATION BOARD, Defendant and Respondent;
RICHARD PASSALACQUA, Real Party in Interest and Respondent.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II, IV, V, and VI of the Discussion.

**COUNSEL**

Law Offices of Michael C. Hall and Michael C. Hall for Plaintiff and Appellant.

Louise H. Renne, City Attorney, Randy Riddle and K. Scott Kickey, Deputy City Attorneys, for Defendant and Respondent.

No appearance for Real Party in Interest and Respondent.

## Opinion

**JONES, P. J.**—Jonathan Cobb appeals a judgment denying his petition for writ of administrative mandate (Code Civ. Proc.,[1] § 1094.5) reviewing a rent control decision of the San Francisco Residential Rent Stabilization and Arbitration Board (Rent Board). Cobb sought to set aside the Rent Board's decision establishing the base rental of his tenant, Richard Passalacqua, as $600. He contends he is entitled to a base rental of $1,500 under the Costa-Hawkins Rental Housing Act (Civ. Code, § 1954.50 et seq.; Costa-Hawkins Act).

### Factual Background[2]

Since 1984, Cobb has owned and resided in one unit of a four-unit apartment building. Sometime in 1984, he rented another unit to Frances Restoni for $440 per month. Cobb acknowledged that he lost the Restoni rental agreement, but, according to Cobb, it was a standard form rental agreement, which provided that a "Tenant shall not assign this agreement or sublet any portion of the premises without prior written consent of the Owner."

Cobb never increased Restoni's rent. In March 1996, Restoni's son, Richard Passalacqua, moved into her apartment without obtaining Cobb's permission. According to Passalacqua, his son, Joseph, then 15 years old, also began living half-time in the apartment. According to Cobb, whenever he asked about Passalacqua's plans, Restoni and Passalacqua both replied that Passalacqua was staying only temporarily.

In May 1998, Restoni vacated her apartment due to ill health. Thereafter, Cobb accepted rent from Passalacqua, who had not paid him rent as long as Restoni was living in the apartment. Effective November 1, 1998, the rent was raised to $600 per month, pursuant to an oral agreement between Cobb and Passalacqua. Passalacqua thought the increase was "fair."

In late spring 1999 Joseph, then 18 years old, began living full-time in the apartment. In June 1999 Cobb served Joseph with a "6.14 Notice." The notice informed Joseph that "(1) [w]hen the last tenant vacates the premises, a new tenancy is created for purposes of determining the rent under the [San Francisco Residential Rent Stabilization and Arbitration Ordinance (Rent

---

[1]Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

[2]Our factual summary is drawn from evidence presented before the Rent Board's administrative law judge.

Ordinance)]; and (2) [a]ll new co-tenants or occupants are not considered tenants under subsection (a) of Section 6.14 of the [Rent Board's] Rules and Regulations." The notice included a copy of rule 6.14, as amended March 24, 1998.[3] Under the Rent Ordinance, a new tenancy permits a landlord to increase the rent without the Rent Ordinance limitations on rental increases to an in-place tenant. (S.F. Admin. Code, § 37.3, subd. (d)(1)(A).)

It is undisputed that Cobb never served Passalacqua with a 6.14 Notice.

By letter dated June 16, 1999, Cobb's attorney admonished Passalacqua of his obligation to pay his rent in a timely fashion, and failing to do so, "your landlord may lawfully terminate your rental agreement on the ground that you have habitually paid the rent late."

In mid-September 1999, Cobb notified Passalacqua that, effective November 1, 1999, the rent would increase to $1,500 per month, in accordance with the Costa-Hawkins Act. Passalacqua then petitioned the Rent Board for arbitration on the grounds that the rent increase to $1,500 was beyond the limits permitted under the Rent Ordinance. Cobb responded that the rent increase was not governed by the Rent Ordinance but by the Costa-Hawkins Act because Passalacqua moved into the apartment after January 1996 and Restoni, its original occupant, had since vacated it.

The section of the Costa-Hawkins Act on which Cobb relied states: "Where the original occupant . . . who took possession of the . . . unit pursuant to the rental agreement with the owner no longer permanently reside[s] there, an owner may increase the rent by any amount allowed by this section to a lawful sublessee or assignee who did not reside at the . . . unit prior to January 1, 1996." (Civ. Code, § 1954.53, subd. (d)(2).)

### PROCEEDINGS BEFORE THE RENT BOARD

The Rent Board hearing officer concluded that the Costa-Hawkins Act was inapplicable because Passalacqua was not a sublessee or assignee of Restoni. Instead, he became Cobb's tenant when Cobb began accepting rent from him in May 1998. The hearing officer also observed that "there is not compelling evidence" the original lease contained a prohibition against subleases or assignments without the landlord's prior written permission. But even if it did, the hearing officer concluded that Cobb waived any prohibition in the original rental agreement by his conduct. The landlord accepted rent, including a rent increase, from Passalacqua; he sent him

---

[3] Rule 6.14 is discussed further in a nonpublished portion of this opinion.

notices of habitually late rent payments; and, despite knowing Passalacqua was living in the apartment as early as 1996, failed to take any action to confirm that Passalacqua's residency was temporary.

The hearing officer granted Passalacqua's petition and ordered that his current base rent remain $600, with an anniversary date of "November." The order does not give a year for the anniversary date, but it is presumably November 1998, when Passalacqua's rent was increased to $600.

Cobb appealed the hearing officer's decision to the Rent Board, which accepted the appeal and remanded it for a hearing on the issues of waiver and estoppel. Specifically, the hearing officer was to determine: (1) Did Cobb's acceptance of rent from Passalacqua after Restoni moved out constitute a waiver of the Costa-Hawkins Act, insofar as Cobb did not receive written notice of Passalacqua's occupancy of the apartment and thereafter accepted rent? (2) Was Passalacqua estopped from asserting that Cobb waived his statutory right to a market rate increase because he attempted to deceive Cobb into accepting rent by claiming that he was residing in the apartment only temporarily?

The hearing officer granted Passalacqua's petition on remand after concluding Cobb failed to establish waiver or estoppel. When Cobb's appeal to the Rent Board was denied, he filed the instant petition for administrative mandate.

This appeal follows the denial of Cobb's petition by the trial court.

## DISCUSSION

Cobb contends the Rent Board's decision[4] was an abuse of discretion because it was not supported by the evidence and was contrary to the provisions of the Costa-Hawkins Act.

### I. Standard of Review

In determining whether to grant a writ pursuant to section 1094.5, the trial court inquires whether there was a prejudicial abuse of discretion in the administrative agency's decision. (§ 1094.5, subd. (b).) An abuse of discretion is established if the agency has not proceeded in the manner

---

[4]We recognize that the decision and findings therein were actually made by a hearing officer, although the Rent Board ultimately voted to deny the landlord's appeal. For convenience we refer to the hearing officer's decision and findings as that of the Rent Board.

required by law, its decision is not supported by the findings, or the findings are not supported by the evidence. (§ 1094.5, subd. (b).) Where there is a claim that the findings are not supported by the evidence and, in matters like this where the court does not exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in light of the whole record. (§ 1094.5, subd. (c); *Getz v. City of West Hollywood* (1991) 233 Cal.App.3d 625, 627 [284 Cal.Rptr. 631].)

The appellate court reviews the agency's decision under the same substantial evidence standard used by the trial court.

## II. *Timeliness of Petition**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III. *Costa-Hawkins Act*

Prior to enactment of the Costa-Hawkins Act, local rent control ordinances were generally categorized as "strict" or "moderate." "Strict" or "vacancy control" ordinances continued control of the rent on a unit when it became vacant, prohibiting an increase when a new tenant occupied the unit. "Moderate" or "vacancy decontrol" ordinances, such as the San Francisco Rent Ordinance, permitted a landlord to raise the rent on a unit to market rate when it became vacant and a new tenant moved in; once this new rent was determined the rent was again controlled during this tenant's occupancy. (Legis. Analyst, analysis of Assem. Bill No. 1164 (1995-1996 Reg. Sess.) p. 2.)

The Costa-Hawkins Act establishes vacancy decontrol for residential dwelling units where the former tenant has voluntarily vacated, abandoned or been legally evicted. (Legis. Analyst, analysis of Assem. Bill No. 1164 (1995-1996 Reg. Sess.) p. 2.) Thus, "[n]otwithstanding any other provision of law, an owner of residential real property may establish the initial rental rate for a dwelling or unit," except in specified situations. (Civ. Code, § 1954.53, subd. (a).) Although the Costa-Hawkins Act does not define "initial rental rate," the parties do not dispute that Civil Code section 1954.53, subdivision (a) permits landlords to impose whatever rent they choose at the commencement of a tenancy.

As previously noted, the Costa-Hawkins Act also provides that the landlord may increase the rent by any amount to the lawful sublessee or assignee

*See footnote, *ante*, page 345.

of the original occupant when the original occupant no longer resides in the unit permanently and the sublessee or assignee did not reside in the unit prior to January 1, 1996. (Civ. Code, § 1954.53, subd. (d); Legis. Analyst, analysis of Assem. Bill No. 1164 (1995-1996 Reg. Sess.) p. 3.) Passalacqua did not reside in the apartment until March 1996. Therefore, the Costa-Harris Act entitled Cobb to impose a rental rate in an amount of his choosing, as he sought to do with his notice of rent increase effective November 1, 1999, if either of two circumstances was present: Passalacqua's initial occupancy as a new tenant commenced on that date (Civ. Code, § 1954.53, subd. (a)), or Passalacqua was Restoni's sublessee or assignee as of that date (Civ. Code, § 1954.53, subd. (d)). Substantial evidence supports the Rent Board's findings that Passalacqua was not a sublessee or assignee on November 1, 1999, but rather that he became a tenant in his own right in June 1998 or at least no later than October 1998.

Under the Costa-Hawkins Act, "tenancy" includes the lawful occupation of property, as well as a lease or sublease. (Civ. Code, § 1954.51, subd. (f).) The Rent Ordinance defines "tenant" as a "person entitled by written or oral agreement . . . or by sufferance, to occupy a residential dwelling unit to the exclusion of others." (S.F. Admin. Code, § 37.2, subd. (t).) ■ A tenancy may be created by consent and acceptance of rent, despite the absence of a lease. (*Getz v. City of West Hollywood, supra,* 233 Cal.App.3d at p. 629.)

■ Cobb knew as of mid-May 1998 that Restoni no longer lived in the unit. He acknowledged that he began accepting rent in the full amount directly from Passalacqua alone as of June 1998. He negotiated a rent increase with Passalacqua in October 1998, to take effect November 1, 1998; Restoni was not involved in the negotiation. He complained to Passalacqua in June 1999 that the rent was habitually delinquent and requested delinquent rent payments from him, without reference to any obligation on Restoni's part for the rent. He sought a rent increase directly from Passalacqua in September 1999. This evidence reasonably demonstrates that Cole deemed Passalacqua, not Restoni, his sole tenant as of June 1998.

Furthermore, there was no evidence to support a finding that Passalacqua was Restoni's subtenant or assignee after her departure. ■ A subtenant has only a portion of an interest in a lease; the original lessee retains a right of reentry at some time during the unexpired term of the lease. (*Kendall v. Ernest Pestana, Inc.* (1985) 40 Cal.3d 488, 492, fn. 2 [220 Cal.Rptr. 818, 709 P.2d 837].) For an assignment to be effective, it is essential that the owner of the right to be transferred manifest an intention to transfer the right, and the burden of proving an assignment lies with the party asserting the rights

thereunder. (*Cockerell v. Title Ins. & Trust Co.* (1954) 42 Cal.2d 284, 291-292 [267 P.2d 16]; *Sunburst Bank v. Executive Life Ins. Co.* (1994) 24 Cal.App.4th 1156, 1164 [29 Cal.Rptr.2d 734].)

 Restoni performed no obligations under the lease after she moved out of the apartment. Nothing in her conduct or Passalaccqua's subsequent conduct implied that she retained any interest in the apartment. Likewise, there was an absence of evidence from which to find that Restoni manifested an intent to transfer her right to occupy the apartment to Passalacqua. The Rent Board could reasonably infer that she moved out because her health demanded it, and she did so without regard to whether Passalacqua or anyone else remained in the apartment.

On this evidence the Rent Board could find that Passalacqua was an existing tenant when Cobb notified him in September 1999 that his rent would be increased effective November 1, 1999. Therefore, the Costa-Hawkins Act did not provide authority for the amount of the increase Cobb sought.

IV-VI*

. . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment denying Cobb's petition for writ of administrative mandate is affirmed.

Simons, J., and Gemello, J., concurred.

On May 9, 2002, the opinion was modified to read as printed above.

---

*See footnote, *ante*, page 345.