Opinion
BENSON, J.
The plaintiff, Julius M. Tappe, aka Mike Tappe (hereafter Tappe), commenced an unlawful detainer action against defendant, Richard P. Lieberman (hereafter Lieberman), following the latter’s failure to comply with a 30-day notice to terminate. The tenancy consisted of an oral agreement to rent four rooms in a multiunit commercial-residential property located at 1114 Sutter Street, San Francisco. The case proceeded to trial and judgment was entered for Lieberman.
The trial court determined that Tappe’s failure to comply with certain notice requirements imposed by section 37.9(b) of the Residential Rent Stabilization and Arbitration Ordinance (hereafter ordinance) of the City and County of San Francisco was a complete defense to the action in unlawful detainer.
Ordinance section 37.9(b) requires that a landlord, before endeavoring to recover possession of a rental unit, inform the tenant in writing of the grounds upon which the landlord seeks possession, and further, that advice regarding the notice to vacate is available from the Rent Arbitration and Stabilization Board. It is conceded that Tappe failed to comply with section 37.9(b).
The sole issue presented on appeal is whether the ordinance should apply to the “tenancy” under the facts presented in this case. We find it should not and, for reasons hereafter expressed, reverse the judgment.
*Supp. 22 A brief factual recitation is in order.
For many years prior to the enactment of the ordinance, Lieberman operated a residential guest house business known as The Harcourt Residence Club. The residence club adjoined the Sutter Street property which was acquired by Tappe in 1977. Lieberman entered into an oral agreement with Tappe’s predecessor in interest to rent four rooms. When Tappe acquired the property, he continued to rent the four rooms to Lieberman. At no time did Lieberman personally reside in the rooms. Rather, the rooms served as housing for employees of the residence club. The employees resided within the rooms for varying periods. Typically an employee would reside within a room for five months. At the time of service of the notice, the rooms had been consistently occupied by the same employees for more than 32 days. While the city characterized the rooms as a “hotel” for licensing purposes only, the Sutter Street building was not a hotel nor were the rooms used as hotel rooms. Lieberman paid monthly rent for the four rooms pursuant to the oral agreement.
The residence club employees were assigned the rooms by Lieberman, or, if sufficiently senior in terms of employment time, an employee could elect to occupy one of the subject rooms in lieu of wages or in addition to wages. The employee possessed a key to the room occupied and Lieberman, through the residence club had a duplicate key to the room. Tappe had no control over Lieberman’s assignment of the rooms to his employees. Lieberman provided prospective employees with a form entitled “Employment Application.” The form contained a section entitled “Conditions of Employment” which in relevant part reads as follows: “. . .1 understand and agree that my employment is for no definite period and may be terminated at any time without any previous notice regardless of date or payment of wages. I further understand and agree that if room, board or other benefits are furnished to me in lieu of wages or in addition to wages that such benefits shall terminate upon the termination of my employment and that I will forthwith vacate the room provided to me and will remove all my personal effects from the premises. I further acknowledge that room is furnished to me as a licensee and not as a tenant.” Immediately following the above statement is a place for dating and signature of the prospective employee.
In addressing the problem presented by this appeal there are several well defined guidelines which govern the process of review. The fundamental rule of statutory construction is to ascertain the intent of the legislative body so as to effectuate the purpose of the law. (Moyer v. Workmen’s Comp. Appeals Bd. (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) To put the matter another way, statutes should be construed *Supp. 23 so as to give a reasonable result consistent with the legislative purpose. (Prunty v. Bank of America (1974) 37 Cal.App.3d 430, 436 [112 Cal.Rptr. 370].) In attempting to determine the legislative intent, the court must consider the purpose, object, and policy underlying the enactment. (Sun, Ltd. v. Casey (1979) 96 Cal.App.3d 38, 41 [157 Cal.Rptr. 576].) Legislative records may be looked at to determine legislative intent and it will be presumed that the Legislature adopted proposed legislation with the intent and meaning expressed in committee reports. (Southland Mechanical Constructors Corp. v. Nixen (1981) 119 Cal.App.3d 417, 427 [173 Cal.Rptr. 917].)
The trial court in this case found that the rented rooms fell within the definition of dwelling units under ordinance section 37.2(k), and that Lieberman was a “tenant” as defined under section 37.2(m). With these essential findings the trial judge ruled that Tappe was subject to the ordinance and that his failure to comply with the notice requirements of section 37.9(b) was a complete defense to the unlawful detainer action. While we can agree that rented rooms fall within the ordinance’s definition of dwelling units, we cannot concur that Lieberman is a “tenant” within the contemplation of the ordinance without doing serious mischief and damage to the legislative purpose and the public policy embodied by the ordinance.
Statutes are to be given reasonable and common sense construction in accordance with their apparent purpose and intention; construction is to be practical rather than technical. (Fireman’s Fund Ins. Co. v. Security Pacific Nat. Bank (1978) 85 Cal.App.3d 797, 815.) The construction given to a statute should not be one which would lead to absurd results or results not contemplated by the Legislature. (Cory v. Golden State Bank (1979) 95 Cal.App.3d 360, 367 [157 Cal.Rptr. 538].)
To ascertain the intent of the board of supervisors in enacting the ordinance, this court reviewed the public files of that body. The intent of the board of supervisors in enacting the ordinance is determinable from the legislative history and from section 37.1(b), the findings in the ordinance itself. The history and the findings are consistent in terms of determining legislative purpose. The ordinance was enacted to respond to two principal factors: (a) a critically low vacancy rate within the city and county, and (b) excessive, unregulated rent increases. The combination of those factors had a detrimental effect on substantial numbers of San Francisco renters, creating special hardship on senior citizens, persons on fixed incomes, and low and moderate income households, The clear objective of the ordinance and the compelling public policy which gave birth to its enactment, was the extension of some measure of protection to tenants in residence. By no interpretation can it be said that the protections provided by the ordinance *Supp. 24 were intended, or even contemplated to extend to a nonresident “tenant” who utilized dwelling units for commercial advantage in the operation of a business.
We are not here dealing with the conventional, traditional, landlord-tenant relationship to which the protections of the ordinance are clearly addressed. The facts here are unique. Rigid adherence to technical language will bring about a nonsensical, unintended result. In plain language, the ordinance before us seeks to protect renters who live in dwelling units. Mr. Lieberman does not live in these dwelling units and never had. He designates those who will live there. If we extend the protections of section 37.9(b) to Mr. Lieberman, what protections do we extend the employees residing in the dwelling units? Absolutely none. They are there by the consent of their employer. They are required to acknowledge their licensee status. Their residential tenure is dependent upon their continued employment at The Harcourt Residence Club. Termination of their employment for whatever cause, whim or reason, terminates their housing in the rented dwelling units.
We are asked to extend to Mr. Lieberman, a nonresident renter, a public policy protection by reason of his acknowledged right to exclusive occupancy which allows him the designation of “tenant.” Yet the “real tenants,” those who actually reside in the rooms and pay their rent in the form of in lieu wages, who bear the designation of licensees, have no protection at all. This is a result we cannot accept for to do so would subvert legislative intent and reduce a commendable public objective to absurdity.
The judgment is reversed. The trial court is ordered to enter judgment for the plaintilf and to order restoration of possession of rooms 5, 6, 9 and 14 at 1114 Sutter Street, San Francisco, to the plaintilf.
Dearman, P. J., and Figone, J., concurred.