Opinion
BEVERLY, J.
Defendant and appellant Paul Cohen appeals from the judgment entered against him and in favor of plaintiff and respondent Blima Pick for possession and damages.
Appellant contends that the West Hollywood Rent Stabilization Ordinance (hereafter sometimes the ordinance), sections 6413.a.2(c) and 6413.a.3 prohibit respondent from evicting appellant because appellant is a surviving relative who occupied the premises for more than one year prior to the death of his father.
West Hollywood Rent Stabilization Ordinance section 6413.a.2 provides that a tenant has not violated any obligation of his tenancy and his tenancy may not be terminated by “(c) occupancy of the rental unit by one (1) additional person in excess of the number permitted by the rental agreement, if that person is the spouse, domestic partner, child (by blood or adoption), parent, grandparent, brother, or sister of the tenant occupy the rental unit. ... In the event of the occupancy of one (1) additional person ... in the unit as provided above, the tenant shall provide the owner with written notification of the addition of a new person and describe the relation of the new person with the tenant.”
Section 6413.a.3 of the ordinance provides: “Surviving Tenant. If the original tenant vacates the unit, an additional person who has occupied the unit pursuant to paragraph a.2 above, shall not be protected from eviction under this paragraph a. unless the additional person lived with the tenant for at least one year and the tenant has died or become incapacitated.”
Respondent concedes that appellant is protected. under the ordinance, but contends that section 6413.a.3 of the ordinance is invalid. We disagree.
Respondent’s first contention is that general state law fully occupies the field in defining “tenant,” and the courts have determined whether an occupant is within the definition of tenant and subject to the protection of *Supp. 9 rent control ordinances by looking only to state law. A review of cases establishes that respondent is not correct.
The Supreme Court did a thorough analysis of the extent of police power held by local government in enacting rent control ordinances in Birkenfeld v. City of Berkeley (1976) 17 Cal.Sd 129 [130 Cal.Rptr. 465, 550 P.2d 1001] (Birkenfeld). The court held that rent control ordinances were a permissible exercise of a municipality’s police power to the extent that the ordinances did not conflict with the state’s general law. (Id. at pp. 140-142.) The fact that the ordinances necessarily affect private civil relationships does not bar their enactment. (Id. at pp. 142-143.) Prohibitions on eviction of a tenant “in good standing at the expiration of the tenancy unless the premises is to be withdrawn from the rental housing market or the landlord’s offer of a renewal lease has been refused” are “reasonable means of enforcing rent ceilings.” (Id. at p. 148.) The addition of defenses to eviction based on rent control legislation does not conflict with general state laws governing the eviction procedure. (Id. at p. 149.) However, the opinion did not directly address the extent to which a municipality can define what constitutes a tenant.
In Miller & Desatnik Management Co. v. Bullock (1990) 221 Cal.App.3d Supp. 13 [270 Cal.Rptr. 600] (Miller & Desatnik), the question of whether the defendant in an unlawful detainer action was a tenant was directly addressed. Bullock was the mother of the tenant, who had died four years before the unlawful detainer was filed. Her daughter had rented the premises under a written month-to-month agreement. Bullock concealed her daughter’s death from the plaintiff and paid rent in her daughter’s name. She did not live in the apartment, but visited it frequently. Upon discovering the death of the tenant, the plaintiff immediately served a notice to vacate and stopped accepting rent. (Id. at pp. Supp. 15-16.) This court first determined, under general state law, that the death of the tenant under a month-to-month tenancy terminates the tenancy on the 30th day following the last payment of rent by the tenant prior to her death. (Id. at pp. Supp. 18-19.) We next determined that Bullock was not a tenant by looking to the definition of tenant in the Santa Monica Rent Control Charter Amendment. We found that Bullock did not come within that definition and was therefore not entitled to protection under the amendment. (221 Cal.App.3d at pp. Supp. 19-20.) Two separate determinations were made: first, that the daughter’s tenancy ended with her death; and second, that at the time of her daughter’s death, Bullock did not fit within the definition of tenant so as to be entitled to the protection of the rent control ordinances.
The court in Tappe v. Lieberman (1983) 145 Cal.App.3d Supp. 19 [193 Cal.Rptr. 514] (Tappe), similarly determined that the defendant was not *Supp. 10 protected by the rent control ordinance of San Francisco by looking at the definition of tenant in the ordinance and the legislative intent behind the ordinance. (Id. at pp. Supp. 23-24.) The defendant in that case hired the premises to house his employees. He never lived in the premises, and his employees occupied the premises as licensees of the defendant. (Id. at p. Supp. 24.)
Chan v. Antepenko (1988) 203 Cal.App.3d Supp. 21 [250 Cal.Rptr. 851] (Chan), was also a case involving a nontenant. The defendant was a resident manager of the apartment house, who was given an apartment as an incident of his employment. His employment contract specifically stated that he was not a tenant. (Id. at p. Supp. 23.) The court held that the defendant was not a tenant entitled to protection under the ordinance and that the determination was in accord with the rent control ordinance. (Id. at p. Supp. 25.) The court also determined that the plaintiffs were not landlords, with regard to the defendant, under the definition in the ordinance. (Id. at p. Supp. 26.)
In Miller & Desatnik, supra, 221 Cal.App.3d Supp. 13, Tappe, supra, 145 Cal.App.3d Supp. 19, and Chan, supra, 203 Cal.App.3d Supp. 21, the courts determined, based on the rent control ordinances’ own definitions of landlord and tenant, that the ordinances did not apply.
In three other cases, the courts have determined that the defendants were entitled to protection of the relevant rent control ordinances. In the first, Gross v. Superior Court (1985) 171 Cal.App.3d 265 [217 Cal.Rptr. 284], Victoria Mews Consortium purchased the property at a trustee’s sale, then attempted to evict Gross under the statutes permitting eviction by unlawful detainer following a trustee’s sale. (Id. at pp. 268-269.) The court, relying on Birkenfeld, supra, 17 Cal.3d 129, concluded that the ordinance did not conflict with the unlawful detainer statutes by giving the tenant a substantive defense to the action (Gross, supra, 171 Cal.App.3d. at p. 271), and was not void because it “created a tenancy despite the existence of contract and real property principles which would have otherwise precluded the tenancy.” (Id. at p. 272.) Additionally, the court determined that the consortium was a landlord under the definition in the rent control ordinance. (Id. at p. 274.)
Parkmerced Co. v. San Francisco Rent Stabilization & Arbitration Bd. (1989) 215 Cal.App.3d 490 [263 Cal.Rptr. 617] (Parkmerced), has similarities to the instant case. In both, the leaseholder permitted a relative to move into the premises and notified the landlord. In Parkmerced, the tenant’s sister was listed on the lease. When the tenant moved out, the sister signed a separate agreement at a rate determined as though a vacancy had occurred. (Id. at p. 492.) The court held that the sister had been a tenant under the *Supp. 11 definition of the rent ordinance prior to her brother’s departure from the property and entitled to the tenancy without an increase due to vacancy. (Id. at p. 494.) This determination was based on two grounds: that she was listed as an occupant on her brother’s lease and that she had paid, and the landlord had accepted, rent. (Ibid.) The court stated, “There is absolutely no indication that this protection was intended to be limited to those tenants who sign formal lease agreements.
“It is well settled that remedial legislation, such as the rent control ordinance at issue, must be liberally construed to effect its purposes. [Citation.] In contravention of this principle, Parkmerced urges us to adopt a narrow and unduly restrictive interpretation of the Rent Ordinance which would undermine the intent of the legislation and deny rent control protection to a long-term resident who occupied her apartment with the owner’s knowledge and consent, albeit without a formal lease. We decline to do so.” (Parkmerced, supra, 215 Cal.App.3d at pp. 495-496.)
Last, Getz v. City of West Hollywood (1991) 233 Cal.App.3d 625 [284 Cal.Rptr. 631], affirmed an administrative decision setting aside a vacancy rent increase. The landlord rented a house to two persons. When one died, a third individual (the occupant) moved into the premises but did not sign any agreement. He did pay the rent and the landlord knew he was there. When the original lessee moved out, the landlord obtained the vacancy rent increase and signed a lease with the occupant. The occupant later discovered the property was subject to rent control and challenged the increase. The rent control board reversed the increase. (Id. at pp. 627-628.) In its review, the court looked to the ordinance’s definitions of tenant and tenancy to determine whether there was sufficient evidence to find the occupant was a tenant entitled to protection prior to the increase. (Id. at p. 629.)
In all of the above cases, the court has looked to the definitions contained in the ordinances to determine the status of the parties and the applicability of the ordinances to the particular situations. These cases do not support respondent’s contention that the general state law occupies the field in the determination of what creates a landlord-tenant relationship.
Respondent next contends that section 6413.a.3 of the West Hollywood Rent Stabilization Ordinance is in excess of the city’s police power.
Birkenfeld states: “In determining the validity of a legislative measure under the police power our sole concern is with whether the measure reasonably relates to a legitimate governmental purpose and ‘[w]e must not confuse reasonableness in this context with wisdom.’ [Citations.]” (Birkenfeld, supra, 17 Cal.3d at p. 159.)
*Supp. 12 Respondent has not challenged the city’s findings that the controls are necessary because of the shortage of residential units, the number of elderly and low-to-moderate-income tenants in the city, and the effects of deregulation; and respondent also has not challenged the city’s conclusion that the ordinance is required. One of the express purposes of the ordinance is to protect tenants from involuntary displacement. (West Hollywood Rent Stabilization Ord., § 6401.)
The section at issue applies only to certain specific relatives or domestic partners of the named tenant, and provides the named tenant is restricted to only allow one person in this category to move into the premises, the person must have been in residence for more than one year, and the tenant must have died before the disputed section provides any protection. This is a proper use of police power to protect a specific group of relatives or domestic partners residing in the controlled property on a permanent basis from involuntary displacement due to a death or incapacity in the family. Additionally, the protection is only from eviction as a termination of tenancy of the named tenant; all of the good cause reasons for termination remain should the relative or domestic partner not perform his obligations as a tenant.
Respondent relies on language in Loretto v. Teleprompter Manhattan CATV Corp. (1982) 458 U.S. 419 [102 S.Ct. 3164, 73 L.Ed.2d 868] (Loretto), stating: “The power to exclude has traditionally been considered one of the most treasured strands in an owner’s bundle of property rights. [Citations.]” (Id. at pp. 435-436 [102 S.Ct. at p. 3176], fn. omitted.) This reliance is misplaced.
Loretto involved a permanent physical occupation of property which “forever denies the owner any power to control the use of the property.” (Loretto, supra, 458 U.S. at p. 436 [102 S.Ct. at p. 3176].) This is not the situation in the instant case.
Loretto has no application to these facts. “Our holding today is very narrow. We affirm the traditional rule that a permanent physical occupation of property is a taking. . . . We do not, however, question the equally substantial authority upholding a State’s broad power to impose appropriate restrictions upon an owner’s use of his property.” (Loretto, supra, 458 U.S. at p. 441 [102 S.Ct. at p. 3179].)
Respondent contends that Government Code section 7060 et seq. (commonly known as the Ellis Act) specifically preempts the ordinance section.
Government Code section 7060, subdivision (a) states, in relevant part: “No public entity . . . shall, by statute, ordinance, or regulation, or by *Supp. 13 administrative action implementing any statute, ordinance or regulation, compel the owner of any residential real property to offer, or to continue to offer, accommodations in the property for rent or lease.” Respondent asserts that this code section prevents the ordinance from compelling her to offer to rent the property to respondent. Respondent is incorrect.
Government Code section 7060.7 explains the legislative intent of the Ellis Act, which is to permit landlords to go out of business by withdrawing all of their rental properties from the market. The section also defines the scope of the act, including situations where it has no application. These include where a landlord wishes to remove only a portion of his rental property from the market. It also states that it is not intended “to diminish any such power which [a] public entity may possess, except as specifically provided in this chapter.” (Gov. Code, § 7060.7, subd. (e).)
There are no facts that respondent is withdrawing any units from the market, much less going out of business. The Ellis Act is of no assistance to her.
Because section 6413.a.3 of the rent stabilization ordinance is a permissible exercise of the police power of West Hollywood, we reverse the judgment of the trial court. Since the parties have stipulated to the facts and there is nothing left for the trial court to determine, we direct the trial court to enter judgment in favor of the appellant. The judgment is reversed and remanded with instructions to enter judgment in favor of appellant. Appellant to recover costs on appeal.
Todd, P. J., and Kriegler, J., concurred.