Filed 9/18/24  Bassler v. Stephens Institute CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MARGARET BASSLER et al.,<br><br>      Plaintiffs and Appellants,<br><br>v.<br><br>STEPHENS INSTITUTE,<br><br>      Defendant and Respondent. | A166639<br><br>(San Francisco City & County<br>Super. Ct. No. CGC-17-557866) |

        This appeal involves a class action brought by college students against a private university alleging tenant harassment in violation of section 37.10B of San Francisco's Residential Rent Stabilization and Arbitration Ordinance (S.F. Admin. Code, § 37.1 et seq., hereafter Rent Ordinance).  After the students presented their evidence at a bifurcated bench trial, the trial court granted the university's motion for judgment (Code Civ. Proc., § 631.8.), finding the students failed to prove they were tenants as defined by the Rent Ordinance.  The students appeal, raising a host of purported errors.  We conclude the trial court's decision on the tenancy issue is supported by substantial evidence and affirm the judgment.

# I. BACKGROUND

## A. *The Parties*

Plaintiffs Margaret Bassler and Chloe Stanfield are former students at Stephens Institute, doing business as The Academy of Art University (Academy). The Academy is a California corporation that operates a for-profit art school. Plaintiffs allege the Academy violated the Rent Ordinance by falsely representing to students housed in Academy-operated housing that their rooms were not subject to the Rent Ordinance and requiring students to "waive their tenants' rights" in order to live in it.

## B. *The Rent Ordinance*

The Rent Ordinance was enacted in 1979 to respond to the hardships faced by tenants from excessive rent increases coupled with a shortage of affordable housing. (Rent Ordinance, § 37.1, subd. (b); *Golden Gateway Center v. San Francisco Residential Rent Stabilization & Arbitration Bd.* (1999) 73 Cal.App.4th 1204, 1211; *Parkmerced Co. v. San Francisco Rent Stabilization & Arbitration Bd.* (1989) 215 Cal.App.3d 490, 495.) Section 37.10B of the Rent Ordinance, entitled "Tenant Harassment," prohibits a "landlord" or any "agent, contractor, subcontractor or employee of the landlord" from doing various acts "in bad faith." (Rent Ordinance, § 37.10B, subd. (a).) The prohibited acts include interrupting or failing to provide required housing services; abusing a landlord's right of access into a rental housing unit; using fraud, intimidation, or coercion to influence a tenant to vacate a housing unit; interfering with the tenant's right to quiet enjoyment of the unit or right to privacy; and causing a tenant to surrender or waive any rights in relation to occupancy of a rental unit. (*Ibid.*)

2

## C. The Academy's Student Housing and Housing License Agreement

The Academy offers residential housing to students "enrolled full-time and onsite as determined by the Office of the Registrar." Eligible students may be assigned housing by entering into a separate agreement with the Academy each academic year (housing license agreement). The housing license agreement expressly states: "This Agreement grants Student permission to use a bed space within [an Academy] residence hall . . . . It is understood and agreed by Student and the [Academy] that this Agreement is a license and not a lease, and that no lease nor any other interest or estate in real property is created by this Agreement . . . . Student is further informed and acknowledges that his or her room . . . does not constitute a Rental Unit as defined by the [Rent Ordinance] or the regulations promulgated pursuant to the Rent Ordinance . . . ." The housing license agreement further states the Academy "may terminate the Student's license to use the room upon 24-hours written notice to Student . . . without alleging just cause under the Rent Ordinance."[1]

## D. Procedural History

On July 8, 2021, the court certified a class consisting of student residents of the Academy who executed housing license agreements for the academic years 2015 through 2020.

In April 2022, the Academy brought a motion for summary judgment and a motion to strike plaintiffs' jury trial demand or in the alternative to bifurcate the trial. The court denied the summary judgment motion, but granted the motion to bifurcate as to two preliminary issues, whether plaintiffs were "tenants" within the meaning of the Rent Ordinance, and

---

[1] Exemplars of the housing license agreement are included in the record.

3

whether plaintiffs' action was barred by res judicata based on a prior action against the Academy filed by the City and County of San Francisco alleging similar violations of the Rent Ordinance.

A bench trial began on June 27, 2022, and the court heard six days of testimony. During their case-in-chief, plaintiffs called Victor Postemski, an independent contractor hired by the Academy to manage student housing. Part of his job included getting students to sign housing license agreements. Postemski explained, "A housing license agreement is an individual license for students at Academy of Art University. So if a student applies for campus housing, they need to sign a license individually. And that gives them the opportunity to be assigned to campus housing and be a participant in our student resident program."

Postemski testified there were often multiple licenses for a single room or unit. The individual license rate for a room does not change based on the number of students who actually license a bed space in that room. Only full-time, on-site students are eligible for Academy student housing; licenses are terminated when students no longer meet the eligibility requirements. Students agree to comply with numerous community policies and conduct regulations. Students' rights to have visitors are limited by these policies. Quiet hours are in effect during certain hours of the day; during finals, 24-hour quiet hours are in effect. The Academy employs student resident assistants who help build and maintain community relations "needed for proper academic success." The resident assistants conduct nightly rounds of the buildings, help mediate any conflicts, and address violations of the housing license agreement.

The Academy retains the right to remove students from student housing for conduct violations upon 24 hours' notice. Postemski explained

there was "no possible way" to create the Academy's desired educational environment "if students were given exclusive possession" without any codes of conduct.

Postemski further testified that the Academy retains the right to move students into different bed spaces in order to manage student conflicts. The housing department enters units to conduct monthly health and safety inspections. The housing department also cleans inside the rooms.

Gordon North, the Academy's vice-president of operations, testified students were moved into units of the Academy's choice for COVID-19 quarantine or bed bug abatement. During intercession periods, students are allowed to store personal property in the units, but the operations department has the right to enter the units to complete maintenance without notice to students. Students are not allowed to replace or bring their own furniture into the units.

Plaintiff Bassler testified she understood her student housing was a "dorm." She was also aware when she signed the housing license agreement she "was not signing a lease."

At the conclusion of plaintiffs' case-in-chief, the Academy brought a motion for judgment pursuant to Code of Civil Procedure section 631.8 on the grounds that plaintiffs presented no evidence they were tenants protected by the Rent Ordinance. In a detailed order granting the Academy's motion for judgment, the court found that plaintiffs failed to carry their burden of proof to establish they are tenants, as required for their cause of action, and thus "as a matter of law they have no potential for tenant harassment" under the Rent Ordinance.

In an equally comprehensive statement of decision, the court found in favor of the Academy on the grounds that (1) plaintiffs lacked standing to

pursue tenant harassment claims under the Rent Ordinance because they did not qualify as tenants; and (2) the Academy had proven each element of its claim preclusion affirmative defense, which barred the plaintiffs' action in its entirety.  As we explain, because plaintiffs' lack of standing is dispositive we will address only whether they were tenants as defined in the Rent Ordinance and affirm on that basis alone.

## II.  DISCUSSION

### A.  *Standard of Review*

Under Code of Civil Procedure section 631.8, the court " ' "may enter judgment in favor of the defendant if the court concludes that the plaintiff failed to sustain its burden of proof.  [Citation.]  In making the ruling, the trial court assesses witness credibility and resolves conflicts in the evidence." ' "  (*Plaza Home Mortgage, Inc. v. North American Title Co., Inc.* (2010) 184 Cal.App.4th 130, 135.)  " ' "The standard of review of a judgment and its underlying findings entered pursuant to [Code of Civil Procedure] section 631.8 is the same as a judgment granted after a trial in which evidence was produced by both sides.  In other words, the findings supporting such a judgment 'are entitled to the same respect on appeal as are any other findings of a trial court, and are not erroneous if supported by substantial evidence.' " ' "  (*Ibid.*; see *Fink v. Shemtov* (2012) 210 Cal.App.4th 599, 608 ["An order granting a defense motion for judgment under Code of Civil Procedure section 631.8 in a nonjury trial is reviewed under the substantial evidence standard," and "[w]e review the trial court's express factual findings in the statement of decision, and any implied findings, for substantial evidence."].)  "But we are not bound by a trial court's interpretation of the law and independently review the application of the law to undisputed facts."

6

(*People ex rel. Dept. of Motor Vehicles v. Cars 4 Causes* (2006) 39 Cal.App.4th 1006, 1012.)

## B. Analysis

Plaintiffs' sole cause of action is for tenant harassment under section 37.10B, subdivision (a)(5) of the Rent Ordinance, which requires them to prove the following elements: (1) defendant is a landlord or its agents; (2) defendant acted in bad faith; (3) plaintiff is a tenant; (4) plaintiff resides in a rental housing unit; (5) defendant influences or attempts to influence plaintiff to vacate a housing unit; and (6) defendant's influence or attempted influence is brought about by fraud, intimidation, or coercion. (See Rent Ordinance, § 37.10B.)

The Rent Ordinance defines a landlord as "[a]n owner, lessor, sublessor, who receives or is entitled to receive rent for the use and occupancy of any residential rental unit or portion thereof in the City and County of San Francisco, and the agent, representative or successor of any of the foregoing." (Rent Ordinance, § 37.2, subd. (h).) A tenant is defined as "[a] person *entitled by written or oral agreement*, sub-tenancy approved by the landlord, or by sufferance, to occupy a residential dwelling unit to the *exclusion of others*." (*Id.*, § 37.2, subd. (t), italics added.)

Rental units are defined as "[a]ll residential dwelling units in the City together with the land and appurtenant buildings thereto, and all housing services, privileges, furnishings and facilities supplied in connection with the use or occupancy thereof, including garage and parking facilities." (Rent Ordinance, § 37.2, subd. (r).) The term "Rental Units" expressly excludes "[h]ousing accommodations . . . in dormitories owned and operated by an institution of higher education, a high school, or an elementary school." (*Id.*, § 37.2, subd. (r)(3).)

7

The central issue in the bifurcated trial was whether plaintiffs were "tenants" as defined in the Rent Ordinance. Despite the limited scope of the issue before the trial court, plaintiffs present a lengthy argument on appeal regarding the legality of the housing license agreement and the Academy's conversion of residential properties into student housing. According to plaintiffs, the Academy's alleged failure to obtain the necessary use permits to convert its properties into student housing means that Academy housing was subject to the Rent Ordinance. Therefore, the housing license agreement was illegal, and plaintiffs should have been protected as tenants under the Rent Ordinance. Plaintiffs, however, fail to cite any controlling authority supporting this novel theory.

The legality of the Academy's use of its properties as dormitories is irrelevant to the question of whether plaintiffs were tenants within the meaning of the Rent Ordinance.[2] Clearly, the Rent Ordinance precludes landlords from requiring *tenants* to waive their rights under the ordinance. (Rent Ordinance, § 37.10B.) However, in order to enforce those rights, plaintiffs must first establish they were *tenants*. Our review of the applicable statutory language and related cases leads us to conclude plaintiffs failed to meet their burden of establishing they were tenants within the meaning of the Rent Ordinance.

Construing Rent Ordinance section 37.2, subdivision (t) according to its plain language, a tenant is a person who is (1) entitled to occupy a residential unit (2) to the exclusion of all others (3) pursuant to a written agreement, oral agreement, subtenancy approved by the landlord, or sufferance.

---

[2] The trial court expressly declined to make a finding on the lawfulness of the Academy's usage of its properties as dormitories.

The right to occupy to the exclusion of others, a key characteristic of a leasehold, is what distinguishes a tenancy from a mere license. (*Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1040 (*Spinks*).) "If the contract between the owner and the occupier gives exclusive possession of the premises against all the world, including the owner, it creates a tenancy; however, if the contract merely confers a privilege to occupy the premises under the owner, it is a license." (*Chan v. Antepenko* (1988) 203 Cal.App.3d Supp. 21, 24 (*Chan*) [interpreting Rent Ordinance, citing *Von Goerlitz v. Turner* (1944) 65 Cal.App.2d 425, 429 [" 'whether an agreement for the use of real estate is a license or a lease is whether the contract gives exclusive possession of the premises against all the world, including the owner, in which case it is a lease, or whether it merely confers a privilege to occupy under the owner, in which case it is a license' "].)

Here, under the express terms of the housing license agreement, plaintiffs were licensees, not tenants. They did not have the exclusive use of any room or portion thereof. The housing license agreement did not guarantee a specific building, room, rate, number of roommates or choice of roommates. Students also could not exclude their roommates from the premises. The housing license agreement gave the Academy the right to change room assignments, assign a new roommate, or reassign a current student to any available bed space at any time. Students could not exclude or preclude entry by the Academy. The housing license agreement limited students' ability to invite guests or to cohabitate, to use alcohol, and to have parties or social gatherings. The Academy's housing department did nothing to contradict the language of the housing license agreement that could have

given students the impression that they possessed anything other than a license.

Plaintiffs presented no evidence of a lease or any other facts that would show they had "the right to exclusive possession as against the whole world, including the landowner." (*Spinks*, *supra*, 171 Cal.App.4th at p. 1040.) Rather, the evidence presented at trial, including the language of the housing license agreement and witness testimony, all support the conclusion plaintiffs did not have exclusive possession of their living spaces, and thus did not qualify as tenants as defined by the Rent Ordinance. (See *Tappe v. Lieberman* (1983) 145 Cal.App.3d Supp. 19, 24 [Rent Ordinance "seeks to protect renters who live in dwelling units"; it does not protect licensees]; *Chan*, *supra*, 203 Cal.App.3d at p. Supp. 25 ["As a licensee [defendant] is not entitled to protection of the Rent Ordinance."].)

Despite the plain language in section 37.2, subdivision (t) of the Rent Ordinance requiring *exclusive use* to be considered a tenant, plaintiffs suggest they should qualify as tenants simply because they occupied housing units and paid for them. Nothing in the Rent Ordinance or case authority cited by plaintiffs supports this position.

The plaintiffs' payment to the Academy for housing and housing-related services did not transform the relationship into a landlord and tenant relationship. None of the sections of the Rent Ordinance cited by plaintiffs purport to expand or modify the definition of a tenant. (Cf. Rent Ordinance, § 37.2, subds. (g) [defining "Housing Services"], (h) [defining "Landlord"] & (p) [defining "Rent"].)

The cases cited by plaintiffs do not further their position. For example, *Danger Panda, LLC v. Launiu* (2017) 10 Cal.App.5th 502, 514–515,

rejected the theory that all lawful occupants are tenants.  There, defendants alleged their minor son was entitled to relocation assistance under the Ellis Act[3] (see Rent Ordinance, §§ 37.9A, subd. (e)(3), 37.9, subd. (a)(13)) because he was a lawful occupant of the rental unit, thus qualifying him as a "tenant" under the Rent Ordinance.  (*Danger Panda*, at p. 512.)  Our colleagues in Division Four of this judicial district disagreed and held "lawful occupant" and "tenant" were not interchangeable terms.  (*Id.* at p. 514.)  Rather, "a tenant is a lawful occupant who acquired the right to exclusive occupancy . . . ."  (*Ibid.*)

Similarly, *Cobb v. San Francisco Rent Stabilization & Arbitration Bd.* (2002) 98 Cal.App.4th 345 does not purport to hold lawful occupancy alone establishes tenancy under section 37, subdivision (t) of the Rent Ordinance.  Rather, the issue in *Cobb* was whether a landlord could raise the rent on an apartment under the Costa-Hawkins Rental Housing Act (Civ. Code, § 1954.50 et seq.; Costa-Hawkins Act), which permits an owner to "increase the rent by any amount allowed by [law] to a lawful sublessee or assignee" (Civ. Code, § 1954.53, subd. (d)(2)).  In *Cobb*, the original tenant lived in a rent-controlled apartment with her son and grandson.  When the original tenant moved out for medical reasons, the son began paying rent directly to the landlord.  (*Id.* at pp. 348–349.)  The *Cobb* court affirmed the San Francisco rent board's finding the Costa-Hawkins Act was inapplicable because there was no evidence the son became the mother's sublessee.  (*Cobb*, at pp. 349, 352–353.)  Rather, the son became the landlord's tenant when the landlord began accepting rent directly from the son.  (*Id.* at pp. 352–353.)

Equally unpersuasive is *Lara v. Menchini* (2021) 70 Cal.App.5th Supp. 1, 3, which involved an unlawful detainer action against subtenants in a San

---

[3] (Gov. Code, § 7060 et seq.)

11

Francisco rent-controlled apartment. There, the landlord refused to accept rent from the subtenants to cure the tenant's default. (*Id.* at pp. Supp. 3, 8.) Affirming the unlawful detainer action in favor of the landlord, the court explained that a rent-controlled apartment cannot be passed freely among friends and families. (*Id.* at p. Supp. 8.) Rather, subtenants are protected only when a new tenancy is established. (*Id.* at pp. Supp. 8–9.) The court expressly rejected the subtenants' argument that lawful occupancy alone established a tenancy within the meaning of the Rent Ordinance, such that the landlord was required to accept rent from them. (*Lara*, at p. Supp. 8.)

So too here, we conclude plaintiffs' occupancy of the student housing offered by the Academy did not create a tenancy within the meaning of the Rent Ordinance. Neither the facts nor the applicable law demonstrate plaintiffs were entitled to occupy a residential dwelling unit to the exclusion of others. (Rent Ordinance, § 37.2, subd. (t).)

By failing to establish they were tenants within the meaning of the Rent Ordinance, plaintiffs lacked standing to pursue their claim for tenant harassment under § 37.10B. The trial court did not err in granting the Academy's motion for judgment.

### III. DISPOSITION

The judgment is affirmed. The Academy is entitled to its costs on appeal.

SIGGINS, J.[*]

---

[*] Retired Presiding Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12

WE CONCUR:

HUMES, P. J.

BANKE, J.